UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:12-CR-00751 |
| | § | |
| SILVESTRE LOZOYA-IZAGUIRRE, *et* | § | |
| *al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING MOTIONS TO SUPPRESS

Before the Court are the Defendants' Motions to Suppress Evidence (D.E. 50, 51, 54) and the Government's Responses (D.E. 57, 58). At issue is whether the police officers had probable cause or reasonable suspicion to make the traffic stops that prompted discovery of undocumented alien passengers in the two subject vehicles. For the reasons set out below, the Court finds that there is insufficient evidence of probable cause or objective reasonable suspicion and the Motions are GRANTED.

## FACTS

At approximately 4:00 in the morning on September 8, 2012, George West Police Officer, Ricardo Montemayor was stationary in his vehicle on the median of U.S. Highway 281 at County Road 101, observing the traffic. He testified that traffic is usually light at that hour and most of the vehicles are commercial trucks traveling north. So it was noteworthy when he saw two private passenger cars that appeared to be traveling together. A blue Mercury Mountaineer (Mountaineer) was followed by a gold Ford Explorer (Explorer). He commented that they both moved from the fast lane to the

slow lane, presumptively as a result of noticing his patrol car.  He also testified that they were "sagging" at the rear.

Officer Montemayor had a hunch that the cars were carrying illegal aliens. However, he testified that he needed probable cause—more than his assumptions—to stop the vehicles.  He entered the roadway and accelerated to catch up to the two cars, driving parallel with them while he called in their license plate numbers to dispatch to determine if the vehicles were stolen.  He testified that the Explorer was following the Mountaineer so closely that he believed that the Explorer driver was trying to prevent him from viewing the Mountaineer license plate.  But he was able to read and transmit both license plates.  The dispatch response was that the vehicles were not stolen.

Officer Montemayor testified that he looks for two or three probable cause bases before he stops a vehicle.  While he testified that the Explorer was violating traffic laws by following the Mountaineer too close, he chose to stop the Mountaineer instead.  His stated probable cause for stopping the Mountaineer was "dirty license plates" and "obstruction of windshield."

At the hearing, Officer Montemayor was unable to articulate what substance, other than ordinary road grime, was on the license plate.  Neither did he testify that any particular portion of the license plate had been altered, obscured, or distorted.  He had, after all, been able to read the license numbers accurately and easily enough to call them in to dispatch.  The Court finds that Officer Montemayor's testimony that the license plate was obscured in such a manner as to indicate a traffic law violation is not credible.

His testimony lacked articulable facts of suspected criminal activity with respect to the "dirty license plate."

As for the claim of windshield obstruction, Officer Montemayor stated that he could not remember what the offending item was or how it obstructed the driver's view. He testified that he believed it must have been something hanging from the rearview mirror. Again, because he could not articulate the specific facts to support his belief that he had observed a violation of the law, Officer Montemayor's testimony in this regard is not credible. His testimony, in its entirety, indicated that the traffic violations recited were contrived, unsubstantiated allegations to justify an otherwise unjustifiable traffic stop. If Officer Montemayor's testimony were sufficient to justify this traffic stop, then any vehicle on the roadways would be subject to a traffic stop.

After discovering undocumented aliens and obtaining assistance to detain them and secure the scene, Officer Montemayor informed his supervisor, Sergeant Jason Lee, that he believed that the Mountaineer and Explorer were working in tandem and that Sgt. Lee should find and stop the Explorer. Officer Montemayor testified more than once that Sgt. Lee would have to develop his own probable cause for stopping the Explorer. He did not rely on any collective information. The Court finds that this, along with the fact that Officer Montemayor had no real difficulty reading the license plate of the Mountaineer or pulling the Mountaineer over once he activated his patrol car lights, indicates that the suggestion that the Explorer had been following the Mountaineer too close was not—even by Officer Montemayor's standards—a true traffic violation that justified a stop.

Sgt. Lee testified that he knew he needed his own probable cause to act—that he was not relying on anything said by Officer Montemayor.  Sgt. Lee stated that he stopped the Explorer because of obstruction of the windshield.  Like Officer Montemayor, Sgt. Lee did not remember what that obstruction was, but generally thought it was something hanging from the rearview mirror.   Again, because Sgt. Lee could not articulate the factual basis for his probable cause, the Court finds his testimony to be not credible, but rather a contrivance that potentially puts any vehicle on the road in jeopardy of arbitrary traffic stops.

## DISCUSSION

The Defendants are entitled to the protections of the Fourth Amendment to the United States Constitution, which prohibits unreasonable searches and seizures.  Because the Defendants were seized[1] without a warrant, the Government bears the burden of showing by a preponderance of the evidence that the seizure was reasonable.  *United States v. Jeffers*, 342 U.S. 48, 51 (1951); *Brown v. Texas*, 443 U.S. 47, 51 (1979); *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).   "Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty."  *Brown, supra* at 50-51.

---

[1] *Brown v. Texas*, 443 U.S. 47, 50, 99 S.Ct. 2637, 2640 (1979) (a person is "seized" when detained for questioning).

To satisfy the burden of proof in the context of a traffic stop, the Government must show that the officer making the stop had a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). "This demand for specificity in the information upon which police action is predicated is the central teaching of th[e United States Supreme] Court's Fourth Amendment jurisprudence." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Absent such proof, all resulting evidence, directly and indirectly obtained, must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963).

Investigatory stops, such as the stops that are the subject of this case, are lawful when justified by "reasonable suspicion." *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968). To show "reasonable suspicion," the officer must "point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *Id*. at 21. "Reasonable suspicion," a less difficult standard than "probable cause," still requires an objectively reasonable belief that criminal activity may be afoot. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). The officer's subjective motivations are irrelevant. *Whren v. United States*, 517 U.S. 806, 811-13 (1996).

As set out above, neither officer relied on any basis for stopping the vehicles other than the condition of the license plate (in the case of the Mountaineer) and the status of the windshields (with respect to both vehicles). Section 504.945 of the Texas Transportation Code sets out the license plate violation:

Wrong, Fictitious, Altered, or Obscured License Plate.

(a) A person commits an offense if the person attaches to or displays on a motor vehicle a license plate that: . . .

    (5) has blurring or reflective matter that ***significantly impairs*** the readability of the name of the state in which the vehicle is registered or the letters or numbers of the license plate number at any time; . . . or

    (7) has a coating, covering, protective substance, or other material that:

        (A) ***distorts*** angular visibility or detectability;

        (B) ***alters or obscures*** one-half or more of the name of the state in which the vehicle is registered; or

        (C) ***alters or obscures*** the letters or numbers of the license plate number or the color of the plate.

(emphasis added).

Officer Montemayor's testimony is devoid of any indication that anything, including general road grime, "significantly impaired" the readability of the license plate or otherwise distorted, altered, or obscured the plate's information. The dispatch recording (Defendants' Exhibit 2), in which he accurately recites the license numbers while driving parallel to the vehicles, further directly contradicted any testimony that the license plate "dirt" presented a problem rising to the level of a violation of the law. The condition of the Mountaineer's license plate did not supply reasonable suspicion that any criminal activity was afoot.

The officers relied on Texas Transportation Code § 547.613 for their claims that both vehicles were unlawfully equipped with respect to their respective windshields:

Restrictions on Windows.

(a) Except as provided by Subsection (b), a person commits an offense that is a misdemeanor:

    (1) if the person operates a motor vehicle that has an object or material that is ***placed on or attached to the windshield*** or side or rear window ***and that obstructs*** or reduces the operator's clear view. . . .

(b) Subsection (a) does not apply to: . . .

    (4) a rearview mirror . . . .

(emphasis added).

    Once again, without specific facts regarding what the object was and how it was attached to the windshield or how it obstructed the view, the officers have failed to articulate a basis for a reasonable suspicion that this section of the Texas Transportation Code was being violated at the time they stopped the respective vehicles. Defense counsel emphasized the exception for the rearview mirror in the context of rebutting the application of the provision to any item dangling from the rearview mirror. However, without the facts to evaluate what the items were in the first place, the Court need not reach the question whether items dangling from a rearview mirror are "attached" to the windshield because they are placed on the exempt rearview mirror, which in turn is attached to the windshield. This record simply fails to show evidence of a reasonable suspicion of the violation of a law.

    It is not enough that an officer states a legal conclusion that a traffic stop is conducted for a specific legal violation. The officer must be able to state, factually, what he observed that constitutes a violation. The evidence certainly need not rise to a level

sufficient to convict that person on the alleged violation. *Wong Sun, supra* at 479. But it does need to be factually specific enough that a court can evaluate it under a totality of the circumstances test to determine if the officer had a reasonable suspicion or probable cause. On this record, the Officers established only bare allegations. That can never be enough to satisfy the Fourth Amendment prohibition against unreasonable searches and seizures.

## CONCLUSION

The Government has failed to satisfy its burden to demonstrate that the Officers had probable cause or an objective reasonable suspicion that justified the stops of the Mountaineer and the Explorer. Consequently, the Defendants' Motions to Suppress Evidence are GRANTED and all evidence obtained as a result of the traffic stops is SUPPRESSED.

ORDERED this 30th day of November, 2012.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE